IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. 1:09-cv-00617 |
| Plaintiff, | ) ) ) | COMPLAINT |
| v. | ) ) | |
| PROFESSIONAL BUILDING SYSTEMS OF NORTH CAROLINA, LLC | ) ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race, and to provide appropriate relief to Efird Cato, Albert Davis, Torrence Funderburk, Scottie O'Nell Green, Rodney Medley, and Michael Scott (collectively referred to hereinafter as the "Aggrieved Individuals"), as well as other similarly situated black employees who were adversely affected by such practices. Specifically, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that Defendant, Professional Building Systems of North Carolina, LLC ("Defendant") discriminated against the Aggrieved Individuals and other similarly situated black employees, by subjecting them to racial harassment that created a racially hostile work environment because of their race, black.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a North Carolina corporation doing business in the State of North Carolina and the City of Mt. Gilead, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, the Aggrieved

Individuals filed charges with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From around July 2005 until around early 2008, Defendant engaged in unlawful employment practices at its Mt. Gilead, North Carolina facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1). Specifically, Defendant discriminated against the Aggrieved Individuals and other similarly situated black employees, based on their race, by maintaining a racially hostile work environment and subjecting them to severe or pervasive racial comments and conduct that created a racially hostile work environment. The offensive conduct occurred on a daily or almost daily basis, and was perpetrated primarily, but not exclusively, by one of Defendant's managers who created and displayed nooses made of electrical wire around Defendant's facility at various times. He also created and distributed racially offensive drawings to certain black employees which depicted blacks and the Ku Klux Klan, made racially offensive remarks about blacks, and used racial epithets including the word "nigger" when referring to one or more of the Aggrieved Individuals and to black employees in general. Further harassment consisted of graffiti on Defendant's premises which included the word "nigger" and other racial slurs. The harassment was unwelcome to the Aggrieved Individuals and other similarly situated black employees, some or all of whom complained about the racial harassment several times individually to Defendant between mid-2005 and early 2008. More specifically:

   a. Efird Cato was subjected to unwelcome racial conduct that included but was not limited to nooses, offensive racial drawings, and racial remarks, from about July

2005 to September 2007. For example, Cato witnessed one of Defendant's managers make nooses out of electrical wire; draw diagrams that the manager claimed were depictions of the "Ku Klux Klan looking down a well at a black man," and a "white man whooping a nigger;" and make a cardboard cutout of a person which the manager then used to place a noose around the neck of the figure. The manager also referred to Cato and other black employees by the term "nigger." Additionally, Cato witnessed at least two nooses hanging in Defendant's workplace. Cato complained to his supervisor, and also to the alleged harasser's supervisor, but the harassment continued.

      b.     Albert Davis was subjected to unwelcome racial conduct that included but was not limited to nooses, offensive racial drawings, and racial comments, from about fall 2006 to September 2007. For example, Davis witnessed his supervisor create and display nooses in Defendant's workplace, and once witnessed him make a cardboard figure of a person, place a noose around its neck, and write the words "come over for the cookout" on the figure. Davis' supervisor also referred to Davis and other black employees by the terms "boy," and "dumb ass nigger." Davis complained to the alleged harasser's supervisor and to Defendant's Plant Manager, but the harassment continued.

      c.     Torrence Funderburk was subjected to unwelcome racial conduct that included, but was not limited to nooses, racially offensive drawings and graffiti, and racial comments, from around late 2005 to September 2007. For example, Funderburk was subjected to at least two nooses in Defendant's workplace. He also witnessed one of Defendant's managers construct a cardboard figure of a person and place a noose around its neck. Further, Funderburk was called a "nigger" multiple times, and observed graffiti

containing racial epithets in one of Defendant's bathrooms. He complained at least once to the alleged harasser's supervisor, and at least twice to the Plant Manager, however, the harassment continued.

      d.      Scottie O'Nell Green was subjected to unwelcome conduct in the form of nooses in the workplace sometime in 2007. Green observed multiple nooses in Defendant's workplace, including two nooses that he witnessed one of Defendant's managers make.

      e.      Rodney Medley was subjected to unwelcome racial conduct that included but was not limited to nooses and racially offensive graffiti from about September 2007 to early 2008. For example, Medley witnessed at least one noose in Defendant's workplace, and also observed graffiti which contained racial epithets, in one of Defendant's bathrooms. Medley complained to one of Defendant's managers about the graffiti, but Defendant did not remove the graffiti.

      f.      Michael Scott was subjected to unwelcome racial conduct that included but was not limited to nooses and racially offensive drawings, jokes, and graffiti sometime in 2007. For example, Scott observed his supervisor make nooses out of electrical wire at least five times, and witnessed him draw a diagram which the supervisor described as a depiction of the "Ku Klux Klan looking down a well at a black man." Scott's supervisor also called Scott "nigger" and made racial jokes on a daily basis. Finally, Scott observed graffiti that contained racial epithets in one of Defendant's bathrooms. Scott complained to the alleged harasser's supervisor, however, the harassment continued.

5

Defendant is liable for subjecting Albert Davis and Michael Scott to a racially hostile work environment because the harassment was perpetrated by a manager with direct supervisory authority over them.  Further, Defendant is liable for subjecting Efird Cato, Torrence Funderburk, Scottie O'Nell Green, Rodney Medley, and other similarly situated black employees to a racially hostile work environment because Defendant knew or reasonably should have known about the harassment, but failed to take prompt or effective action to stop it.

8.  The effect of the practices complained of in paragraph 7 has been to deprive the Aggrieved Individuals and other similarly situated black employees of equal employment opportunities, and otherwise adversely affect their status as employees because of their race, black.

9.  The unlawful employment practices complained of in paragraph 7 were intentional.

10.  The unlawful employment practices complained of in paragraph 7 were done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals and other similarly situated black employees.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a racially hostile work environment or from any other employment practice that discriminates on the basis of race, and from retaliating against employees who oppose

6

unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for blacks, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole the Aggrieved Individuals and other similarly situated black employees, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 7 above, in amounts to be determined at trial.

D. Order Defendant to make whole the Aggrieved Individuals and other similarly situated black employees, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 7, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay the Aggrieved Individuals and other similarly situated black employees punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this 13th day of August, 2009.

        Respectfully submitted,

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        1801 L Street, N.W.
        Washington, D.C. 20507

        **s/ Lynette A. Barnes**_____
        LYNETTE A. BARNES (NC Bar # 19732)
        Regional Attorney

        TINA M. BURNSIDE
        Supervisory Trial Attorney

        **s/ Darryl L. Edwards**_____
        DARRYL L. EDWARDS (PA Bar ID # 205906)
        Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        Charlotte District Office
        129 West Trade Street, Suite 400
        Charlotte, North Carolina 28202
        (704) 344-6875 (Direct Dial)
        (704) 344-6870 (Facsimile)
        Darryl.Edwards@eeoc.gov

        **ATTORNEYS FOR PLAINTIFF**